IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| DENNIS ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 04-1120-T |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff, Dennis Anderson, filed this action to obtain judicial review of the Defendant Commissioner's final decision denying his applications for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 410 *et seq.*, and for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Plaintiff's applications were filed on November 9, 1999[1] and were denied both initially and upon reconsideration by the Social Security Administration (SSA). Plaintiff requested a hearing before an administrative law judge (ALJ) which was held on October 3, 2001. The ALJ issued a

---

[1] Plaintiff first filed a claim alleging disability on August 4, 1994. (R.30) After denial initially and upon reconsideration, he requested and was granted a hearing before an ALJ who denied plaintiff's disability claim in a decision issued on June 28, 1996. (R.30). On September 25, 1999, the Appeals Council denied his request for review, stating that the request was "untimely." (R.30). Plaintiff filed his current application for disability on November 9, 1999 alleging disability since September 15, 1992. (R.560-63). In this current action, the ALJ found no new and material evidence to warrant reopening the prior application, determining that the doctrine of *res judicata* precluded a finding of disability through June 28, 1996. (R.31, 36). Since plaintiff's insured status expired on December 31, 1995, the ALJ determined that the relevant issue was whether plaintiff was entitled to Title XVI benefits beginning November 9, 1999, the date he filed his new Title XVI application. (R.31-32).

1

decision on January 25, 2002, determining that plaintiff was not disabled as defined by the Act and Social Security Regulations. The Appeals Council denied plaintiff's request for review on March 26, 2004. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. Plaintiff then filed this action asking the court to reverse the ALJ's decision on the grounds that the decision is not supported by substantial evidence in the record and remand the case for a new hearing or, in the alternative, award benefits to the plaintiff. The Commissioner contends that the decision is supported by substantial evidence. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## Standard of Review

Judicial review in this court is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. See 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 840 (6th Cir. 1997); Cutlip v. Sec'y of Health and Human Serv., 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. Perales, 402 U.S. at 401; Her, 203 F.3d at 389; Drummond, 126 F.3d at 840; Cutlip, 25 F.3d at 286. The reviewing court may not resolve conflicts in the evidence nor decide questions of credibility. Walters, 127 F.3d at 528 (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)); Cutlip, 25 F.3d at 286. In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also

supports the opposite conclusion. Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997); Smith v. Chater, 99 F.3d 780, 782 (6th Cir. 1996) (citing Cutlip, 25 F.3d at 286).

## Background of the Case

Plaintiff is a fifty-year-old male with a sixth grade education who is working to obtain his GED. (R.586). Plaintiff alleged that he was disabled since September 15, 1992 due to bilateral elbow and knee pain; neck, back, right shoulder, and hand pain; vision problems; and depression. (R.564).

Plaintiff's past relevant work includes twenty years of experience in auto body work and four years of experience as a part-time diver. (R.587). He claims he left auto body work because of back pain and began working as a diver. (R.587). He quit diving in 1995 because he felt he could not handle his weight in the water and was afraid he might drown. (R.587, 608-09). Plaintiff has not worked since then. (R.587).

At the request of the SSA, Dr. Grafton H. Thurman conducted a consultative physical examination of Plaintiff Anderson in December 1999, following his application for disability. (R.429, 431). Dr. Thurman reported no impairment-related physical limitations in a December 15 report. (R.429). In a December 16 evaluation, Dr. Thurman documented plaintiff's peripheral joint pain in his elbows and shoulder as well as complaints of back pain. (R.431-32). Nevertheless, an MRI of plaintiff's back showed negative results and he reported that the hydrocodone he takes helps the pain. (R.432). Dr. Thurman described plaintiff as well-developed, well-nourished, having good mobility and an excellent gait, able to get on and off the examination table and in an out of his chair without difficulty. (R.433). He also found a full range of motion in plaintiff's peripheral joints, full motor strength in plaintiff's arms and legs,

3

and no evidence of deformities, paraspinous muscle spasms, nerve root compression in plaintiff's back, osteoperosis, or vertebral collapse. (R.433-34).

In a letter dated November 8, 1999, Dr. William DeSouza, plaintiff's treating physician, reported a compression fracture along plaintiff's L1 vertebra and noted a history of operations performed on plaintiff's elbows and right shoulder. (R.422). Dr. DeSouza asserted that plaintiff has stiffness in his knees and tendinitis in his left elbow, hands, and other joints. (R.422-23). He peculiarly labeled plaintiff as "disabled" in his letter. (R.422). However, in a visit on June 29, 1999, Dr. DeSouza described plaintiff as being "[w]ell developed, well nourished and muscular" and that plaintiff was under "no acute distress." (R.424). In that same visit, plaintiff demonstrated minimal impairment in both his straight leg raising and ventral flexion of his lumbar thoracic spine despite his vertebra fracture. (R.424). Through March 29, 2000, the physical examinations of plaintiff's back revealed no change in plaintiff's condition, yet plaintiff continued to complain of lower back pain. (R.524-26). On March 1, 2000, Dr. DeSouza noted that plaintiff had no gross tenderness or deformities in his lower spine. (R.526). Plaintiff again complained of lower back pain in August 2000 because he "overdid himself" and the physical examination again showed no change in plaintiff's back condition. (R.527). On August 23, 2000, plaintiff expressed increased pain in his left knee caused by "stepping wrong up a hill." (R.527). Other than his November 1999 letter, at no point did Dr. DeSouza ever place any limitations on plaintiff's activities, but instead regularly prescribed medications for the pain. (R.421-28, 517-29). Dr. DeSouza withdrew his medical services after February 2001 because plaintiff complained of a "lack of care" from him. (R.529).

4

In September 2000, Dr. DeSouza referred plaintiff to Dr. Harold Antwine, an orthopedic specialist, for consultation and evaluation. (R.530). Dr. Antwine observed that plaintiff could walk to the examination table without difficulty or assistance and found him capable of a full range of motion in his hips, knees, and ankles. (R.530). In a straight leg raise test and reverse straight leg raise test, plaintiff showed no signs of pain in his back. (R.530). With the exception of some pain observed in his left knee, the remainder of plaintiff's examination was deemed unremarkable. (R.530).

After plaintiff discontinued Dr. DeSouza's medical services, he was treated at the McKenzie Medical Center in April 2001 for elbow, knee, and back pain. (R.545). An MRI was performed on his back on May 25, 2001. (R.549). On May 31, 2001, in a follow-up visit with Dr. Brad Wright, plaintiff was diagnosed with left-sided L4-L5 stenosis with degenerative disk disease, based on the MRI. (R.550). Dr. Wright referred plaintiff to Dr. Michael Glover, a neurosurgeon, for surgical consideration. (R.550, 552).

Dr. Glover performed an evaluation of the plaintiff on July 5, 2001. (R.553). He found full range of motion in plaintiff's back. (R.553). In reviewing the MRI from May 2001, Dr. Glover found only a mild L1 compression fracture and very mild L4-L5 disc dessication. (R.553). He discredited Dr. Wright's diagnosis, observing no significant stenosis, no clinically significant deformities, and normal disc heights in plaintiff's MRI. (R.553-54). Dr. Glover diagnosed plaintiff with chronic lumbar pain and meralgia parasthetica of his left hip, but noted that plaintiff "should be at activity as tolerated" and discovered nothing that would cause a severe disability. (R.554). The May 2001 MRI ordered by Dr. Wright was also compared to an MRI performed three years ago and was found to be "pretty much the same." (R.554).

5

Two physical residual functional capacity assessments were performed, one on December 21, 1999 by Dr. Lawrence Schull, the other on May 19, 2000 by Dr. Denise Bell. (R.439-46, 479-86). Both assessments were nearly identical, finding plaintiff capable of lifting twenty-five pounds frequently, fifty pounds occasionally, and capable of standing or sitting six out of eight hours. (R.440, 480). No other physical limitations were mentioned. (R.440, 480).

Plaintiff also alleges that he has vision problems. He underwent eye surgery, performed by Dr. Gregory S. Carroll, on June 11, 2001 to have a cyst removed. (R.536). As a result of the surgery, Dr. Carroll reported that plaintiff has double vision and difficulty reading longer than thirty minutes. (R.23-24, 539).

Although plaintiff took antidepressants during the period of his treatment by Dr. Desouza through at least the administrative hearing, plaintiff's mental problems were not first documented until a psychological evaluation on December 12, 1999. (R.421-428, 517-29, 591; 435). Performed by Dan Emerson, a psychological examiner, and Dr. Robert Ilardi, a licensed clinical psychologist, the evaluation reported that plaintiff gets angry frequently but has never undergone psychiatric treatment. (R.435). In fact, he believed that all his problems were merely physical in nature. (R.436). Based on their observations, Mr. Emerson and Dr. Ilardi concluded that plaintiff had a personality disorder with passive-aggressive and paranoid features. (R.437). However, they stated that Plaintiff Anderson's affect was "appropriate," his range of affect was "adequate," behavioral observations showed 'little" anxiety, and plaintiff's gross and fine psychomotor functioning appeared "unremarkable." (R.437). In addition, Mr. Emerson and Dr. Ilardi placed no limitations on plaintiff's activities for any mental impairments. (R.435-38).

On January 5, 2000, plaintiff underwent a mental residual functional capacity assessment by a state agency contract examiner. (R.447). The examiner observed marked limitations in his ability to understand and remember instructions, carry out detailed instructions, and interact with the general public. (R.447-48). Moderate limitations were recorded for plaintiff's ability to concentrate for extended periods, complete a work day or week without experiencing psychological symptoms and perform consistently without unreasonable resting periods, and respond to changes at work. (R.447-48). Nonetheless, plaintiff was not significantly limited in fourteen out of twenty categories. (R.447-48).

Another mental residual functional capacity assessment was conducted by a different state agency contract examiner, Dr. Frank Edwards, on May 18, 2000. (R.460). The assessment revealed no severe mental impairments for the plaintiff. (R.460). Dr. Edwards noted that plaintiff's primary complaints were physical and that he had received no mental treatment for any disorders. (R.461). Dr. Edwards further assessed that plaintiff had only slight limitations to his daily activities and social functioning, was seldom deficient in his concentration, persistence, and/or pace causing failure to complete tasks in a timely manner, and never had episodes of deterioration in work settings causing plaintiff to withdraw from the situation. (R.467). Otherwise, there was no evidence showing mental impairments. (R.460-77).

The record shows that plaintiff's daily and weekly activities include cooking, washing dishes, visiting friends and relatives, caring for his personal needs without assistance, grocery shopping, burning his garbage, chopping wood twice per week, working on his truck, woodworking, and making a hammock and a birdhouse, among others. (R.129-47, 166-69, 256,

7

436). Plaintiff also reported that on one occasion, he injured his back while lifting a television. (R.557).

At the administrative hearing, plaintiff testified to having had surgery performed on his right shoulder and elbows. (R.588-89). He complained of pain in his elbows, fingers, back, and knees. (R.588-91). He also testified to pain when he stands and walks. (R.593-94). Plaintiff alleged vision problems that make it difficult for him to read without a magnifying glass. (R.596-97). In addition to the plaintiff, a vocational expert, Lisa Courtney, testified at the hearing. (R.599). Ms. Courtney contended that, based on the physical residual functional capacity assessment by Dr. Bell, plaintiff could continue performing skilled medium work,[2] such as his auto body work. (R.601-02). His visual impairments would have no real impact on his work. (R.602). Moreover, Ms. Courtney noted that even if plaintiff had mental impairments that prevented him from performing auto body work,[3] he would be able to perform thousands of other jobs in the medium unskilled, light, or sedentary range. (R.603-04).

On January 25, 2002, after considering the entire record, ALJ John P. Garner determined that Plaintiff Anderson was not disabled in accordance with 20 C.F.R. §§ 404.1520(e) and 416.920(e). More specifically, the ALJ found that: (1) no new and material evidence or other good cause was shown to warrant reopening the ALJ's decision issued on June 28, 1996, that the evidence received for plaintiff's current application was insufficient basis to reach a conclusion

---

[2] Medium work is defined as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday, and sitting intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects. 20 C.F.R. § 404.1567(c), 416.967(c); Social Security Ruling 83-10.

[3] Based on the residual functional capacity assessment performed on January 5, 2000 by the unnamed state agency examiner.

adverse from the ALJ's final determination, and that the decision is thus binding through June 28, 1996 under the doctrine of res judicata; (2) plaintiff has not engaged in substantial gainful activity since the date of his current application, November 9, 1999; (3) medical evidence establishes that the plaintiff suffers from a severe combination of impairments, including an old compression fracture of the L1 vertebra, degenerative disc disease, elbow and shoulder pain and operative procedures, but that no impairment or combination of impairments is listed or medically equal to those in Appendix 1, Subpart P, Regulations No. 4; (4) plaintiff's allegations of limitations in functioning are not credible; (5) plaintiff has not experienced any pain or combined symptoms of a disabling level of severity; (6) plaintiff has the residual functioning capacity to perform work-related activities except for work involving lifting more than fifty pounds (20 C.F.R. §§ 404.1545 and 416.945); (7) performance of plaintiff's work-related activities in his past relevant work as an auto mechanic would not be precluded by his residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965); (8) plaintiff's medically determinable impairments do not prevent him from performing his past relevant work; (9) at any time through the date of this decision, plaintiff has not had a "disability" as defined in 20 C.F.R. §§ 404.1520(e) and 416.920(e). (R.36-37).

## Analysis

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. 42 U.S.C. §§ 423, 1382c; see Felisky v. Bowen,

35 F.3d 1027, 1035 (6th Cir. 1994). The claimant bears the ultimate burden of establishing an entitlement to benefits. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
2. An individual who does not have a severe impairment will not be found to be disabled.
3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart. P, Appendix 1.
4. An individual who can perform work that he or she has done in the past will not be found to be disabled.
5. If an individual cannot perform his or her past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1989).

In this case, analysis proceeded to step four, where the ALJ found that plaintiff is not disabled because he has the residual functional capacity to perform his past relevant work. Plaintiff makes essentially two arguments in his appeal: first, substantial evidence does not support the ALJ's findings that plaintiff's mental impairments are non-severe and that he can perform his past relevant work because the ALJ improperly discredited certain pieces of medical and testimonial evidence; second, the ALJ failed to use the correct legal standard in considering whether or not plaintiff's prior application should be reopened. The court must determine if

10

substantial evidence supports the ALJ's findings and whether or not the ALJ applied the proper legal standard in choosing not to reopen the prior claim.

1.  Substantial Evidence Supports the ALJ's Conclusions that Plaintiff's Mental Impairments Are Non-Severe and that He Can Perform His Past Relevant Work

Plaintiff's main argument is that the ALJ's determination that plaintiff's mental impairments are non-severe is not supported by substantial evidence. In coming to his conclusion, the ALJ relied on the mental residual functional capacity assessment by Dr. Frank Edwards, the fact that the evaluation by Mr. Emerson and Dr. Ilardi failed to demonstrate mental impairments upon plaintiff's activities, and the fact that plaintiff has never sought mental health treatment nor taken psychotropic medications for his personality disorder. (R.33, 35-36).

The assessment by Dr. Edwards reported no severe mental impairments and only slight limitations in plaintiff's daily functions. As already noted, plaintiff's primary complaints to Dr. Edwards were physical, not mental. While diagnosing the plaintiff with a personality disorder, the psychological evaluation by Mr. Emerson and Dr. Ilardi failed to show that his daily activities were impaired by his disorder. Their report described plaintiff's affect as "appropriate," his range of affect as "adequate," and plaintiff's psychomotor functioning as "unremarkable." (R.437). Again, plaintiff admitted to Mr. Emerson and Dr. Ilardi that his problems were merely physical. Morever, the evaluation lacked restrictions on plaintiff's activities for his disorder. Such a lack of physician-imposed restrictions is substantial evidence for a finding of no disability. See Nunn v. Bowen, 828 F.2d 1140, 1145 (6th Cir. 1987) (ruling that the ALJ was not erroneous in finding no disability based on lack of physician-imposed restrictions).

The fact that plaintiff neither sought psychiatric treatment nor took psychotropic medications for his personality disorder is further evidence of the ALJ's finding of non-disability.

11

Failure to seek treatment can be considered in determining non-disability unless the claimant is unable to afford treatment and his or her condition is in fact disabling. See McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990); Hale v. Sec'y of Health and Human Serv., 816 F.2d 1078, 1081-82 (6th Cir. 1987). Plaintiff has failed to establish that his mental condition is in fact disabling or that he is unable to afford mental treatment. Therefore, the plaintiff's failure to seek treatment is a factor that can be considered in finding no disability. For the foregoing reasons, the court finds substantial evidence to support the ALJ's determination that plaintiff's mental impairments are non-severe.

Plaintiff argues that the ALJ erroneously failed to articulate reasons for rejecting the mental residual functional capacity assessment performed by a state agency examiner on January 5, 2000, the psychological evaluation performed by Dan Emerson and Dr. Robert Ilardi, plaintiff's own testimony and history of taking psychotropic medication, and a statement made by a SSA employee regarding plaintiff's behavior. Plaintiff's argument is without merit.

The ALJ implicitly rejected the January 2000 assessment by the unnamed state agency examiner in favor of the assessment by Dr. Edwards in May 2000. ALJ Garner noted that Dr. Edwards' assessment was chosen over the January 2000 assessment because it was fully supported by the objective evidence, implying that the January 2000 assessment was not. (R.35-36). Thus, by articulating reasons for choosing Dr. Edwards's report, the ALJ implied his reasons for rejecting the state agency examiner's assessment.

Plaintiff errs in contending that the ALJ rejected Mr. Emerson's and Dr. Ilardi's findings. As mentioned previously, their evaluation shows no limitations to plaintiff's ability to perform work-related functions nor imposes any restrictions on his daily activities. The ALJ actually used

their evaluation, along with other objective evidence, to support his final determination that plaintiff has no severe mental impairments. Therefore, the ALJ did not reject their findings as plaintiff suggests..

As for plaintiff's testimony and history of taking psychotropic medications, nothing plaintiff said nor his taking medications demonstrates a severe mental impairment. He admits he has never received psychiatric treatment and does not want to receive such treatment. In addition, plaintiff recognized that his problems were physical and not mental in nature on at least two occasions. Plaintiff did take antidepressants while receiving treatment from Dr. DeSouza, but no documentation gives an explanation or describes a mental impairment for which the medication was prescribed. Thus, the ALJ was justified in ignoring this evidence without comment since it is not evidence of a mental impairment.

Plaintiff argues that a statement made by a SSA employee that plaintiff appeared very depressed and angry should have been considered as a statement of a lay witness. Plaintiff cites Lashley v. Sec'y of Health and Human Serv., 708 F.2d 1048 (6th Cir. 1983) to support his argument. However, the Sixth Circuit required the lay witness testimony to be fully supported by the reports of treating physicians. Lashley, 708 F.2d at 1054. In addition, the lay testimony permitted in Lashley was from the claimant's wife–a witness who knew the claimant intimately and could testify to his condition based on countless observations and close interaction. In the present case, the SSA employee's statement is not supported by the reports of plaintiff's treating physicians and her statement was based on a single observation of a complete stranger. Concurrently, she is not an acceptable medical source to give an opinion about plaintiff's mental condition. See 20 C.F.R. § 416.913. Therefore, the ALJ correctly ignored her statement without

comment since it was not proper evidence of a mental impairment. For the reasons set forth above, the court finds that the ALJ properly considered all of the evidence of plaintiff's alleged mental impairments and articulated reasons for rejecting certain pieces of evidence when it was appropriate to do so.

Plaintiff's ability to perform his past relevant work is supported by substantial evidence. The objective medical evidence showed that plaintiff would not be precluded from performing work-related activities in the medium work range, including those activities plaintiff performed in auto body work. In a residual functional capacity assessment, Dr. Denise Bell reported plaintiff capable of lifting twenty-five pounds frequently, fifty pounds occasionally, and standing or sitting six out of eight hours–all within the requirements of medium work. Other reports by examining doctors found full range of motion in plaintiff's joints and back and no impairment-related physical limitations were ever discovered. Tests showed that plaintiff did have a mild compression fracture of the L1 vertebra, but this condition was not debilitating and remained unchanged throughout the period at issue. Plaintiff's reported daily activities substantiate this medical evidence: shopping for groceries, working on his truck, making birdhouses and hammocks, cooking, chopping wood, caring for all his personal needs, etc. Moreover, it appears that at least some of plaintiff's pain resulted not from a disability but from situations when he "overdid himself," "stepp[ed] wrong up a hill," or lifted a large object such as a television. (R.491, 557). The ALJ was warranted in considering these household and social activities in determining plaintiff's disability status. See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 532 (6th Cir. 1997). Finally, Ms. Courtney, a vocational expert, concluded that plaintiff could perform his past relevant work in auto body work or, if he had severe mental impairments, any

other unskilled medium work. Therefore, the court finds that substantial evidence supports the ALJ's conclusion that the plaintiff is able to perform his past relevant work.

Plaintiff argues that the opinions of Dr. DeSouza and Dr. Blackburn (R.494-95), both finding plaintiff capable of less than sedentary work, should be given great weight since they were plaintiff's treating physicians. However, Dr. Blackburn's assessment was performed in July 1994, outside of the relevant time period of November 9, 1999 through January 25, 2002. (R.494). With respect to Dr. DeSouza, the ALJ discredited his opinion that plaintiff was totally disabled because he did not relate his opinion to any specific findings since November 8, 1999 and because he is not a specialist in musculoskeletal disorders. (R.33, 35). In addition, Dr. DeSouza's opinion is inconsistent with the opinions of other doctors and plaintiff's reported activities as discussed above. Thus, the ALJ properly discredited Dr. DeSouza's and Dr. Blackburn's opinions.

2. The ALJ's Failure to Use the Correct Legal Standard Is Not Reversible Error

Plaintiff contends that ALJ Garner failed to use the correct legal standard in determining whether good cause existed for reopening his prior disability claim. Normally, federal courts do not have jurisdiction to review the ALJ's decision not to reopen a prior application unless a colorable constitutional claim is raised, such as when a claimant's mental capacity may have prevented him or her from pursuing administrative remedies. See Wills v. Sec'y of Health and Human Serv., 802 F.2d 870, 873 (6th Cir. 1986) (citing Califano v. Sanders, 430 U.S. 99, 107-08 (1977)). Plaintiff asserts that his mental capacity at the time prevented him from understanding the review process. A colorable mental incapacity claim is established only when both of the following requirements are met: claimant's mental incapacity prevented him or her from timely

15

requesting review of an adverse decision and claimant had no legal representation. S.S.R. 91-5p (July 1, 1991). The ALJ should have used this standard in considering whether or not to reopen the prior claim. Nevertheless, plaintiff has failed to show that he had no one legally responsible for prosecuting his claim at the time of the prior application and thus has failed to raise a colorable constitutional claim. Since the plaintiff has not raised a colorable constitutional claim, the fact that the ALJ failed to apply the correct legal standard is harmless error and the finding of no good cause to reopen the prior disability application is upheld.

## Conclusion

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

*/s/ James D. Todd*
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

20 July 2005
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 23 in case 1:04-CV-01120 was distributed by fax, mail, or direct printing on July 21, 2005 to the parties listed.

---

Roger Stanfield
LAW OFFICE OF ROGER STANFIELD
P.O. Box 3338
Jackson, TN 38303--333

Joe A. Dycus
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable James Todd
US DISTRICT COURT